## SCALISE v BOY SCOUTS OF AMERICA

Docket No. 244883. Submitted April 20, 2004, at Lansing. Decided
January 20, 2005, at 9:00 a.m. Leave to appeal sought.

John E. Scalise and his minor son, Benjamin Scalise, through his
father as next friend, brought an action in the Isabella Circuit
Court against the Lake Huron Area Council of the Boy Scouts of
America (Boy Scouts) and Mount Pleasant Public Schools (school)
because they were excluded from a local cub scout group when
they refused to affirm the Boy Scouts' required religious declara-
tion. In orders for summary disposition, the court, Paul H.
Chamberlain, J., after first concluding that recruitment in the
school's classrooms by the Boy Scouts during school hours violated
the Establishment Clause of the United States Constitution, US
Const, Am I, and that the trier of fact must determine the
appropriate damages, eventually dismissed the plaintiffs' claims in
their entirety. The court determined that the actions of the Boy
Scouts did not constitute state action; that the Boy Scouts is a
private club and is not a place of accommodation, thus precluding
claims under the Civil Rights Act or public accommodation stat-
utes; and that school policies of allowing the Boy Scouts to use
school facilities did not infringe any fundamental right of the
plaintiffs because the plaintiffs did not show that they were
treated differently from any other group of people or that they had
been denied access or use of school building. The plaintiffs
appealed.

The Court of Appeals *held*:

1. The Establishment Clause of the Michigan Constitution,
Const 1963, art 1, § 4, was not violated by the acts of the school.
The Establishment Clause only controls state action. State action
is determined by the three-pronged test of *Lemon v Kurtzman*, 403
US 602 (1971). The school's policy of allowing the public to use
school facilities is a secular end, and the allocation method for the
facilities is appropriate to that secular objective. The school policy
of allowing the Boy Scouts and other community groups the use of
facilities free of charge or for a fee, without regard to the content
of the discussions at the meetings, and allowing the recruitment by
the Boy Scouts of new members during school hours within the
school by personal appeal and pamphlets in classrooms, hallway

posters, and the collection of membership forms constitutes only incidental, indirect, or remote benefits to religion insufficient to render the school policy unconstitutional based on the advancement of religion. The relationship of the school and the Boy Scouts did not foster excessive governmental entanglement with religion because the school merely required the Boy Scouts to comply with the regulations with which all other organizations using the facilities had to comply and the school did not monitor the Boy Scout gatherings.

2. The school and the Boy Scouts did not jointly violate the plaintiffs' right to equal protection of the laws as guaranteed by the Michigan Constitution, Const 1963, art 1 § 2. A violation of a citizen's constitutional right to equal protection requires state action. The Boy Scouts is a private organization. Private action may be attributed to a public entity in some cases, but in this case the school merely provided its facilities to the Boy Scouts on an equal basis with similarly situated community groups. The Boy Scouts did not provide a function exclusively reserved to the state, was not operating under a state command or compulsion, was not a joint participant or entwined with the school in programs, and did not share a symbiotic relationship with the school mutually conferring benefits on one another. The Boy Scouts' policy of requiring endorsement of religious principles cannot be attributed to the school. In this case, there was no state action by the Boy Scouts.

3. The plaintiffs' public accommodation claims based on the Civil Rights Act, MCL 37.2101 *et seq.*, or the equal accommodation act, MCL 750.146 *et seq.*, are invalid. These laws guarantee and protect the right to the full and equal enjoyment of educational institutions and places of public accommodation and prohibit communications that assert that such institutions and accommodations are not open to one on the basis of his religion. Boy Scout meetings are neither educational institutions nor places of public accommodation, but the Boy Scouts is a private club in which its members have a First Amendment right to freely associate with people of similar beliefs and disassociate from others. The plaintiffs were not discriminated against by denial of full and equal use of or benefit from the school or its programs or by the Boy Scouts being a beneficiary of the school's neutral access policy.

Affirmed.

1. CONSTITUTIONAL LAW — ESTABLISHMENT CLAUSE — STATE ACTION — PRIVATE ORGANIZATIONS.

Analysis of the Establishment Clause of the Michigan Constitution is governed by the test for state action delineated in *Lemon v*

*Kurtzman*, 403 US 602 (1971), under which state action is not unconstitutional if it has a secular purpose, its primary goal neither advances nor inhibits religion, and it does not foster an excessive government entanglement with religion (Const 1963, art 1, § 4).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION CLAUSE — STATE ACTION — PRIVATE ORGANIZATIONS.

There is no violation by a private organization tangentially associated with a governmental agency of a citizen's right to equal protection of the laws as guaranteed by the Michigan Constitution unless state action is demonstrated by the private organization by providing a function exclusively reserved to the state, by operating under a state command or compulsion, by jointly participating, or being pervasively entwined with the agency in programs, or by sharing a symbiotic relationship with the agency mutually conferring benefits on one another (Const 1963, art 1, § 2).

*Timothy J. Taylor, P.C.* (by *Timothy J. Taylor*), for the plaintiffs.

*Braun Kendrick Finkbeiner, P.L.C.* (by *Daniel S. Opperman*), and *Hughes Hubbard & Reed LLP* (by *George A. Davidson*) for Boy Scouts of America.

*Braun Kendrick Finkbeiner, P.L.C.* (by *Scott C. Strattard*), for Mt. Pleasant Public Schools.

Before: ZAHRA, P.J., and SAAD and SCHUETTE, JJ.

SCHUETTE, J. This case arises from the circuit court grant of summary disposition to defendants, Lake Huron Area Council, the local affiliate of Boy Scouts of America (Boy Scouts),[1] and Mt. Pleasant Public Schools

---

[1] Boy Scouts of America is a national scouting organization and defendant is the local scouting affiliate, Lake Huron Area Council. We note that plaintiffs' complaint named only "Boy Scouts of America, Lake Huron Area Council," not the national organization. Thus, our reference to "Boy Scouts" throughout this opinion refers only to the Lake Huron Area Council, not the national organization.

(Mt. Pleasant), in a suit brought by plaintiffs, father and son. Plaintiffs father and son allege that they were excluded from a local cub scout group affiliated with Boy Scouts when the father refused to affirm the Boy Scouts' religious declaration. Plaintiffs charge that the relationship between defendants violated Michigan constitutional and statutory prohibitions on religious discrimination. The circuit court, in two opinions, granted defendants' motion for summary disposition under MCR 2.116(C)(10), dismissing plaintiffs' case in its entirety. Plaintiffs now appeal as of right. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Boy Scouts is a Michigan nonprofit corporation chartered by the national association of Boy Scouts of America to support and organize scouting activities in nineteen counties in mid-Michigan, including Isabella County. Boy Scouts conducts scouting activities, including pack and den meetings of Cub Scouts, through local sponsorships, at times referred to as "charter partners," with a wide array of community organizations in the Mt. Pleasant area. These sponsoring groups are quite diverse, including a local business (DeWitt Lumber), fraternal groups (Borley Hamel VFW Post #3033 and Shepherd Rotary Club), and religious organizations and groups (Beal City Knights of Columbus, Sacred Heart Academy, Latter Day Saints, and Rosebush United Methodist Church), two local school parent teacher organizations (PTO), and one local parent teacher association (PTA). In addition, a local school of Mt. Pleasant's, Rosebush Elementary School, was a "charter partner."[2]

Before September 2000, it was the practice of a representative of Boy Scouts, with Mt. Pleasant's per-

---

[2] This relationship ended a few months after this lawsuit was filed.

mission, to visit several of its elementary schools during school hours. The purpose of the visits was to speak with boys of scouting age about becoming cub scouts and possibly attending evening informational meetings with their parents. In September 2000, Mt. Pleasant notified Boy Scouts that these visits were no longer permissible.

Consistently with Mt. Pleasant's facilities use policy, community organizations were permitted to use school facilities when school was not in session. Among other groups,[3] Boy Scouts used school facilities to hold its den and pack meetings or other scouting activities when school was not in session. In addition, Mt. Pleasant permitted community groups to post and distribute literature within the schools and to provide recruitment flyers for distribution to students. Boy Scouts provided informational literature and recruitment flyers for distribution through this system in Mt. Pleasant classrooms. In November 1997, Ben Scalise was a third-grader at Mt. Pleasant's Fancher Elementary School. After bringing home a Boy Scouts' flyer distributed at Fancher, he and his father attended a cub scout gathering. At the meeting, Mr. Scalise volunteered to become a den leader. Later, having reviewed Boy Scouts' bylaws and mission statement,[4] Mr. Scalise learned that boy scout leaders were required to endorse the Boy

---

[3] The record reflects that since 1997, 127 different groups, organizations, and individuals have used school facilities when school was not in session. In addition to Boy Scouts, a wide range of groups used school facilities in this manner, including Isabella County 4-H, Central Michigan Community Hospital, Amateur Hockey Association of Mt. Pleasant, AFSCME CMU Local 1568, Mitten Bay Girl Scouts, Saginaw Chippewa Indian Tribe, Special Olympics of Michigan, and Maranatha Baptist Church.

[4] "The mission of the Boy Scouts of America is to prepare young people to make ethical choices over their lifetimes by instilling in them the values of the Scout Oath and Law."

Scouts' declaration of religious principle,[5] and youth members, depending on their status as boy scouts or cub scouts, were required to recite either the Boy Scout Oath[6] or the Cub Scout Promise[7] and to abide by either the Scout Law[8] or the Law of the Pack.[9]

In January 1998, Mr. Scalise sent Boy Scouts a letter explaining that the declaration of religious principle was repugnant to his humanist beliefs and requested an exemption from the requirement. Boy Scouts refused, and revoked Mr. Scalise's membership. Subsequently, Mr. Scalise removed Ben from Boy Scouts. Thereafter, Mr. Scalise contacted Mt. Pleasant to voice his concerns about distribution of information in the school about a religious organization and requested that subsequent flyers include a disclaimer informing parents of the religious character of Boy Scouts. Later, in May 1999, after a Boy Scouts' representative visited Ben's classroom during school hours, Mr. Scalise again contacted Mt. Pleasant because the distributed flyers lacked the

---

[5] "The Boy Scouts of America maintains that no member can grow into the best kind of citizen without recognizing an obligation to God and, therefore, recognizes the religious element in the training of the member, but is absolutely nonsectarian in its attitude toward that religious training. The Boy Scouts of America's policy is that the home and the organization or group with which the member is connected shall define attention to religious life. Only persons willing to subscribe to this declaration of religious principle and to obey the bylaws of the Boy Scouts of America shall be entitled to certificates of leadership."

[6] "On my honor I will do my best; To do my duty to God and my country and to obey the Scout Law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight." [<http://www.scouting.org>.]

[7] "I, (name), promise to do my best, To do my duty to God and my country, To help other people, and To obey the Law of the Pack." *Id.*

[8] "A Scout is . . . trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent." *Id.*

[9] "The Cub Scout follows Akela. The Cub Scout helps the pack go. The pack helps the Cub Scout grow. The Cub Scout gives goodwill." *Id.*

requested disclaimer. Mt. Pleasant subsequently requested that Boy Scouts include such a disclaimer, and it complied. In December 1999, unsatisfied with the disclaimer's language,[10] Mr. Scalise again protested the distribution of Boy Scouts flyers. In October 2000, the Scalises filed suit against defendants.

In their initial complaint, plaintiffs alleged that the actions of Boy Scouts and its use of school facilities with the permission of Mt. Pleasant, excessively entangled Mt. Pleasant in Boy Scouts' religious mission in violation of Michigan constitutional guarantees of equal protection and free exercise of religion, as contained in Const 1963, art 1, §§ 1 and 4, and of nondiscriminatory schools, as contained in Const 1963, art 8, § 2. Further, plaintiff claimed that Boy Scouts' actions violated the Michigan Civil Rights Act, MCL 37.2101 *et seq.* Plaintiffs sought damages and injunctive relief.

In April 2000, plaintiffs and defendants filed cross-motions for summary disposition. In April 2001, plaintiffs filed an amended complaint alleging criminal violation of Michigan public accommodation laws, MCL 750.146 *et seq.*, sometimes referred to as the equal accommodation act. In November 2001, the circuit court granted summary disposition to defendants on all claims except one. The trial court, citing *Sherman v Community Consolidated School Dist 21*, 8 F3d 1160 (CA 7, 1993), held that a local Boy Scout council was not a state actor and, therefore, Boy Scouts would not be liable under the Michigan Constitution's Equal Protection Clause, Const 1963, art 1, § 2, its Establishment

---

[10] The disclaimer defined the Boy Scouts' purpose and listed its leadership requirements, one of which was subscribing to the declaration of religious principle, which was reproduced on the flyers verbatim. See n 5.

and Free Exercise Clause, Const 1963, art 1, § 4, and Const 1963, art 8, § 2. Further, the court held that Boy Scouts, as a private club, was exempt from the Michigan Civil Rights Act, and was not a public accommodation as defined within MCL 750.146.

The circuit court held that Mt. Pleasant's policy,[11] which provided Boy Scouts access to school facilities and mailboxes, did not provide special treatment to Boy Scouts, did not compel or encourage the maintenance of Boy Scouts' policy, and thus did not make Mt. Pleasant a symbiotic partner with Boy Scouts in violation of the Equal Protection Clause. However, the circuit court did grant plaintiffs' motion for summary disposition relating to the Establishment Clause charge, finding defendants liable for the recruiting effort by Boy Scouts conducted during school hours.

In February 2002, both defendants moved to dismiss that portion of the November 2001 opinion and order that sustained the plaintiffs' claim for the Boy Scouts' visit during school hours. Plaintiffs moved to revise the opinion and order, reiterating their contention that Boy Scouts was in fact a state actor, and again requested damages to be awarded according to the Michigan Civil Rights Act. In the alternative, plaintiffs contended that *Jones v Powell*, 462 Mich 329; 612 NW2d 423 (2000), recognized judicially inferable damages for civil and constitutional rights violations. In response, defendants contended the Michigan Civil Rights Act, which requires a finding of state action, provided the only

---

[11] "Community groups or organizations which include residents of the district shall be permitted and encouraged to use school facilities for worth while [sic] purposes when such use does not interfere with the school program. School buildings may be used by responsible organizations for activities that are consistent with federal, state and local laws. The Board shall prescribe regulations for occupancy and use to secure fair, reasonable, and impartial use of the properties." Mt. Pleasant Policy 7510.

remedy for violations of such rights. Defendants argued that, because state action was not present here, Boy Scouts was not liable for any damages and thus the action should be dismissed.

In November 2002, the court denied plaintiffs' motion to revise the November 2001 opinion and order and granted defendants' motion to dismiss. The court reiterated that Boy Scouts was not a state actor and, thus, the Michigan Civil Rights Act provided no relief for plaintiffs. Further, the court held that *Jones* militated against judicially inferred damages when a legislative scheme existed to remedy plaintiffs' rights.

In response to the November 2002 order, plaintiffs appealed to this Court. This opinion will address plaintiffs' claims under the Michigan Constitution, including the Establishment Clause, Const 1963, art 1, § 4, and the Equal Protection Clause, Const 1963, art 1, § 2, as well as plaintiffs' claims under Michigan's civil rights and public accommodation statutes, MCL 37.2101 *et seq.* and 750.146 *et seq.* Plaintiffs also alleged that Boy Scouts was acting as a fraternity as proscribed by the Michigan School Code, MCL 380.1316. Because plaintiffs failed to make this final allegation in their initial or amended complaint, this issue is not properly before this Court and will not be addressed in this opinion.

## II. STANDARD OF REVIEW

Summary disposition of all or part of a claim or defense may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). "The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Shepherd Montessori Ctr Milan v Ann Arbor Twp,* 259 Mich App 315, 324; 675 NW2d 271 (2003).

When deciding a motion for summary disposition under subrule C(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999); MCR 2.116(G)(5). A motion for summary disposition based on the lack of a material factual dispute must be supported by documentary evidence. MCR 2.116(G)(3)(b); *Meyer v Center Line,* 242 Mich App 560, 574-575; 619 NW2d 182 (2000). All reasonable inferences are to be drawn in favor of the nonmovant. *Hall v McRea Corp,* 238 Mich App 361, 369-370; 605 NW2d 354 (1999), remanded 465 Mich 919 (2001).

On appeal, a trial court's decision on a motion for summary disposition under subrule C(10) is reviewed de novo. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). This Court must review the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co,* 458 Mich 288, 294; 582 NW2d 776 (1998). Review is limited to the evidence that had been presented to the trial court at the time the motion was decided. *Peña v Ingham Co Rd Comm,* 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003).

### III. MICHIGAN CONSTITUTIONAL CLAIMS

### A. ESTABLISHMENT CLAUSE

The Michigan Constitution provides:

> Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose. The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief. [Const 1963, art 1, § 4.]

Our Supreme Court has held that both the state and federal provisions of the Establishment Clause and the Free Exercise Clause of the First Amendment of the United States Constitution,[12] are subject to similar interpretation. *Advisory Opinion re Constitutionality of 1970 PA 100,* 384 Mich 82, 105; 180 NW2d 265 (1970).

Thus, our Establishment Clause analysis, like the federal analysis, is governed by *Lemon v Kurtzman,* 403 US 602; 91 S Ct 2105; 29 L Ed 2d 745 (1971), in which the Supreme Court developed a three-pronged test to determine whether state action violated the prohibition on the establishment of religion: "First, the [state action] must have a secular ... purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the [state action]

---

[12] The first clause of the First Amendment of the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." US Const, Am I.

must not foster 'an excessive government entanglement with religion.' " *Id.* at 612-613 (citations omitted).[13] If state action violates any prong of *Lemon,* that action contravenes the clause. *Sherman, supra* at 1164.

We initially note that, because of the impressionable nature of school children, the Supreme Court "has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards v Aguillard,* 482 US 578, 584; 107 S Ct 2573; 96 L Ed 2d 510 (1987). We assess plaintiffs' claims with this vigilance in mind.

### 1. *SECULAR PURPOSE*

In pertinent part, Mt. Pleasant policy provided:

> Community groups or organizations which include residents of the district shall be permitted and encouraged to use school facilities for worth while [sic] purposes when such use does not interfere with the school program. School buildings may be used by responsible organizations for activities that are consistent with federal, state and local laws. The Board shall prescribe regulations for occupancy and use to secure fair, reasonable, and impartial use of the properties. [Mt. Pleasant Policy 7510.]

The purpose of this policy is to open Mt. Pleasant facilities to the public, a secular end, and equally allocating the resources of a limited public forum is appropriate to that end. Therefore, *Lemon*'s first prong is not offended. See *Widmar v Vincent,* 454 US 263, 272-273; 102 S Ct 269; 70 L Ed 2d 440 (1981).

### 2. *ADVANCEMENT OF RELIGION*

Plaintiffs contend that Mt. Pleasant favors religious groups over nonreligious groups because it gave Boy

---

[13] Mt. Pleasant Policy 880A, Guidelines for Operations, uses *Lemon*'s Establishment Clause test to control its operations.

Scouts priority over other community groups and allowed Boy Scouts to use school facilities free of charge; permitted Boy Scouts to display recruitment posters in school hallways, while recruiting school personnel to distribute membership solicitations and promotional flyers to, and collect membership applications from, elementary students; and let Boy Scouts conduct recruiting presentations to students in class. We will address each objection.

### a. BOY SCOUTS' USE OF SCHOOL FACILITIES

Mt. Pleasant's policy established priorities among qualified community groups: "school-directed" groups were given the highest priority among applicants and could use facilities at no cost; "school-related" groups, such as school-support organizations, Boy Scouts, 4-H, and faculty organizations, were given priority after any school-directed groups and could also use facilities free of charge. Nonprofit community groups followed, but were charged for the use of facilities, and for-profit groups and noncommunity groups had the lowest priority among qualified applicants and were required to pay for the use of facilities.

Plaintiffs contend that the structure of this policy, particularly the priority Boy Scouts received, gave Boy Scouts a special advantage over other groups and thus advanced Boy Scouts' religious position. We disagree. Although the policy created priorities among groups and waived costs for some, the structure allocated resources reasonably, impartially, and thus secularly. The facilities were open to all groups. The priority designations simply ensured that, among organizations, those most closely connected with the purposes of schools would be served first. Among priority levels, facility access was evenhandedly offered on a first-

come, first-served basis so that no similarly situated group was favored over another. Thus, school-directed and school-related groups were given priority over other groups only because school-directed and school-related groups were those most closely connected with the students for whom the facilities were created. Yet within the school-related group, Boy Scouts was on an even footing with every other level-two priority group. Therefore, Mt. Pleasant's policy was neutral; it had a secular purpose, and it did not advance religion over nonreligion. Simply because Boy Scouts utilized the system does not itself create an Establishment Clause violation.

Plaintiffs seemingly advocate a blanket prohibition against any group with a scintilla of faith-based philosophy from using a Mt. Pleasant facility. The *Lemon* test does not require, nor did the framers of the Constitution intend, to impose a constitutional straightjacket preventing any sentiment of religious belief, however mild, from being expressed by a group or individual in a school. *Comm for Pub Ed & Religious Liberty v Nyquist*, 413 US 756, 771; 93 S Ct 2955; 37 L Ed 2d 948 (1973). Incidental, indirect, or remote benefits to religion do not alone render a particular activity unconstitutional. *Michigan Dep't of Civil Rights ex rel Parks v Gen Motors Corp, Fisher Body Div*, 412 Mich 610, 657; 317 NW2d 16 (1982); *Nyquist, supra* at 771; *Widmar, supra* at 272-273.

Mt. Pleasant's neutrality makes this case indistinguishable from the Supreme Court's conclusions in *Westside Community Schools Bd of Ed v Mergens*, 496 US 226; 110 S Ct 2356; 110 L Ed 2d 191 (1990), *Lamb's Chapel v Ctr Moriches Union Free School Dist*, 508 US 384; 113 S Ct 2141; 124 L Ed 2d 352 (1993),[14] and *Good*

---

[14] At oral argument, plaintiffs suggested that *Lamb's Chapel* supported their contention that Mt. Pleasant was endorsing Boy Scouts' policy.

*News Club v Milford Central School*, 533 US 98, 106; 121 S Ct 2093; 150 L Ed 2d 151 (2001), which collectively hold, inter alia, that the Establishment Clause demands only that school districts act neutrally in allocating community access to school facilities.

> "[T]he [Establishment Clause's] guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." [*Good News Club, supra* at 114, quoting *Rosenberger v Rector and Visitors of Univ of Virginia*, 515 US 819, 839; 115 S Ct 2510; 132 L Ed 2d 700 (1995).]

Here, had Mt. Pleasant not evenhandedly allocated facilities between secular and organizations with some religious precepts, like Boy Scouts, "then [Mt. Pleasant] would demonstrate not neutrality but hostility toward religion." *Mergens, supra* at 248. Such hostility would violate Boy Scouts' student members' First Amendment right to free speech. *Good News Club, supra* at 112 ("[S]peech discussing otherwise permissible subjects cannot be excluded from [school facilities] on the ground that the subject is discussed from a religious viewpoint.").

Therefore, because Boy Scouts is merely one of many diverse organizations using school facilities, Mt. Pleasant is not endorsing Boy Scouts over any other religious or secular group. See *Mergens, supra* at 252. Thus, Mt.

---

Plaintiffs noted that the meeting at issue there "would have been open to the public, not just to church members." *Lamb's Chapel, supra* at 395. The meeting's openness did not control the Supreme Court's decision in *Lamb's Chapel*; that fact was one of many the Supreme Court referenced to conclude that the school district had not endorsed the film to be shown after hours in school facilities. See *id*; see also *Sherman, supra* at 1165 n 12.

Pleasant did not violate the Establishment Clause when it allowed Boy Scouts to meet in its facilities.

### b. *BOY SCOUTS' DISTRIBUTION AND POSTING OF LITERATURE IN PUBLIC SCHOOLS*

Plaintiffs also contend that Mt. Pleasant violated the Establishment Clause by allowing Boy Scouts to use school personnel to distribute its literature and collect its communications during school hours as well as to hang its posters in school hallways. Throughout the school year, flyers from several organizations were distributed to students weekly.[15] The flyers were not discussed in the classroom, incorporated into the curriculum, or made part of the day's activities. Boy Scouts' flyers received no special focus. The same is true of organizational posters that hung in Fancher Elementary's hallways. Among those various posters, Boy Scouts' posters enjoyed no unique focus, were not emphasized by Mt. Pleasant, and were not incorporated into the curriculum.

Thus, we are not presented with the same concerns of endorsement the Supreme Court found in *Allegheny Co v American Civil Liberties Union*, 492 US 573; 109 S Ct 3086; 106 L Ed 2d 472 (1989), in which the Court invalidated the unique, esteemed placement of a crèche in a county courthouse. Nor does this case present the same concerns over coercion that the Supreme Court found in *Lee v Weisman*, 505 US 577; 112 S Ct 2649; 120 L Ed 2d 467 (1992), in which the Supreme Court struck

---

[15] The record shows that since 2000 a wide variety of organizational flyers from various groups have been sent home with students by Mt. Pleasant's distribution system. The list includes the Child and Family Enrichment Council, Chippewa Lanes, the Michigan Educational Trust, the Downtown Business Association, the Isabella Community Soup Kitchen, the Youth Wrestling League, Girl Scouts, Art Reach of Mid-Michigan, and the Festival of Trees.

down a nondenominational prayer for a high school graduation because school officials were involved in selecting the person who delivered the prayer and drafted guidelines for the prayer. See also *Santa Fe Independent School Dist v Doe*, 530 US 290; 120 S Ct 2266; 147 L Ed 2d 295 (2000), in which the Supreme Court invalidated a school policy that permitted student-led prayers before school football games.

Simply because Mt. Pleasant allows civic groups, including Boy Scouts, to distribute flyers to students and hang posters in school hallways does not create an Establishment Clause violation. Ultimately, a wide array of organizations were allowed to display posters in Mt. Pleasant hallways and to distribute literature to students as long as those organizations satisfied the neutral qualifying criteria of Mt. Pleasant Policy 9700.

Further, Boy Scouts' literature did not denote the religious aspect of the group until plaintiffs requested that Boy Scouts add a religious disclaimer to its advertisements. Since plaintiffs requested the addition of the disclaimer, thereby affecting their purported injury, they lack standing to challenge those advertisements with the added disclaimer. See *Lujan v Defenders of Wildlife*, 504 US 555, 560; 112 S Ct 2130; 119 L Ed 2d 351 (1992).

In sum, we hold that Mt. Pleasant's policy, which permits Boy Scouts to distribute and post literature and flyers, did not violate the Establishment Clause of the Michigan Constitution. Const 1963, art 1, § 4.

### c. BOY SCOUTS' SCHOOL-HOURS VISIT

The circuit court originally concluded that the school-hours visit of a Boy Scouts' representative constituted an Establishment Clause violation. However, the circuit court later dismissed plaintiffs' claims in

their entirety. We conclude that the school-hours visit by a Boy Scout representative did not violate the Establishment Clause.

To violate *Lemon*'s second prong, a state policy's *primary* effect must advance religion. Boy Scouts is not primarily a religious organization. Rather, it is an organization whose mission is to prepare young people to make ethical choices by instilling in them certain values, some of which are religiously based. As a state actor, Mt. Pleasant's admittance of a Boy Scouts' representative to invite students to an informational meeting does not have the primary effect of advancing religion over nonreligion. Here, the primary effect and purpose was to inform students of scouting activities. Boy Scouts was not admitted so it could proselytize students.

Here, the recitation of the Cub Scout Promise or the Scout Oath occurs at private gatherings where students and adult members attend freely and willingly. These meetings are sufficiently distinct from school operations so that the line between Mt. Pleasant's school-hours functions and Boy Scouts' after-hours meetings will not be blurred to confuse "children of tender years, whose experience is limited and whose beliefs consequently are the function of environment as much as of free and voluntary choice." *Grand Rapids School Dist v Ball,* 473 US 373, 390; 105 S Ct 3216; 87 L Ed 2d 267 (1985), rev'd on other grounds *Agostini v Felton,* 521 US 203; 117 S Ct 1997; 138 L Ed 2d 391 (1997).

In sum, because this visit was not coercive and was not primarily for the purpose of promoting religion, Mt. Pleasant did not violate *Lemon*'s second prong and, thus, did not violate the Establishment Clause by advancing religious groups over nonreligious groups.

### 3. *EXCESSIVE ENTANGLEMENT*

Alternatively, plaintiffs contend that Mt. Pleasant's actions fostered an excessive governmental entanglement with religion. Here, Mt. Pleasant required Boy Scouts to comply with policies governing school access and the distribution of literature pursuant to Mt. Pleasant Policies 7510, 5722, 8800, and 9700. These general regulations applied to all organizations that sought access to school mailboxes, hallways, and facilities. Such general regulations do not create the excessive entanglement barred by *Lemon*. Rather, *Lemon* prohibits "comprehensive, discriminating, and continuing state surveillance." *Lemon, supra* at 619. Here, Mt. Pleasant did not monitor Boy Scout gatherings; rather, Mt. Pleasant only reviewed Boy Scouts' in-school communications for compliance with Mt. Pleasant's policy. Such action falls far short of comprehensive surveillance. Thus, Mt. Pleasant did not violate the Establishment Clause through excessive entanglement with religion.

As no *Lemon* prong was violated, Mt. Pleasant did not violate the Establishment Clause.

### B. EQUAL PROTECTION CLAUSE

Plaintiffs also allege that Boy Scouts and Mt. Pleasant jointly violated their right to equal protection as guaranteed by the Michigan Constitution. We disagree.

The Equal Protection Clause of the Michigan Constitution provides:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation. [Const 1963, art 1, § 2.]

Our Supreme Court has held this clause to be coextensive with the Equal Protection Clause of the United States Constitution.[16] *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 305-306; 553 NW2d 377 (1996). Thus, the Michigan Constitution, like the United States Constitution, only protects individuals from discriminatory "state action." *Woodland v Michigan Citizens Lobby*, 423 Mich 188, 205; 378 NW2d 337 (1985); *Shelley v Kramer*, 334 US 1, 13; 68 S Ct 836; 92 L Ed 1161 (1948) ("[The Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful."). Yet, in certain limited circumstances, the Supreme Court has found private discriminatory conduct to be state action and violative of the Equal Protection Clause. *Brentwood Academy v Tennessee Secondary School Athletic Ass'n*, 531 US 288, 295; 121 S Ct 924; 148 L Ed 2d 807 (2001) ("[T]he deed of an ostensibly private organization or individual [will] be treated sometimes as if a State had caused it to be performed. Thus . . . state action may be found if, though only if, there is such a 'sufficiently close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' ([*Jackson v Metropolitan Edison Co*, 419 US 345, 351; 95 S Ct 449; 42 L Ed 2d 477 (1974)].")." Thus, whether the plaintiffs' right to equal protection was violated will turn on whether defendants' conduct can be considered discriminatory state action.

### 1. *MT. PLEASANT*

Mt. Pleasant is a state actor. Thus, if Boy Scouts' policy of requiring endorsement of religious principles

---

[16] US Const, Am 14, § 1 provides in part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

can be attributed to Mt. Pleasant, then defendants will have violated plaintiffs' right under Michigan's Equal Protection Clause to be free from discrimination based on religion.

In *Gilmore v City of Montgomery,* 417 US 556; 94 S Ct 2416; 41 L Ed 2d 304 (1974), the Supreme Court addressed whether an organization's discriminatory policy could be attributed to a city through the organization's use of municipal facilities. The Supreme Court held:

> Traditional state monopolies, such as electricity, water, and police and fire protection—all generalized governmental services—do not by their mere provision constitute a showing of state involvement in invidious discrimination. The same is true of a broad spectrum of municipal recreational facilities: parks, playgrounds, athletic facilities, amphitheaters, museums, zoos, and the like. . . .
>
> If, however, the . . . governmental entity rations otherwise freely accessible recreational facilities, the case for state action will naturally be stronger than if the facilities are simply available to all comers without condition or reservation. [*Id.* at 574 (citations omitted).]

The school buildings at issue here fall under that "broad spectrum of municipal recreational facilities." Thus, where Mt. Pleasant merely provided its facilities to Boy Scouts on an equal basis rather than rationing them to Boy Scouts particularly, discriminatory state action did not exist.

As discussed in the Establishment Clause analysis, the record here shows that Mt. Pleasant simply allowed Boy Scouts to use Mt. Pleasant's facilities in the same manner as other similarly situated organizations. Although Boy Scouts was given level-two priority and could use the facilities free of cost, the group was on equal footing with all other level-two priority groups.

Among level-two groups, facilities were available on a first-come, first-served basis and each group's use was subject to the same terms and conditions.

Thus, because Mt. Pleasant did not ration its facilities, but rather distributed access evenhandedly, Boy Scouts' policy of requiring endorsement of religious principles cannot be attributed to Mt. Pleasant on the basis of Boy Scouts' use of Mt. Pleasant's facilities.[17]

### 2. BOY SCOUTS

Boy Scouts is a private organization. Thus, discriminatory state action may be found only if there was a sufficiently " 'close nexus between the State and the challenged action' [so] that [Boy Scouts'] seemingly private behavior 'may be fairly treated as that of the State itself.' " *Brentwood Academy, supra* at 295 (citation omitted). The Supreme Court has found such a nexus when a private actor assumed a traditional public function, when private discrimination has been commanded or compelled by the state, when the state has jointly participated in a private actor's discriminatory conduct, or when a private actor and the state have shared a symbiotic relationship. *Id.*

### a. TRADITIONAL PUBLIC FUNCTION

The United States Supreme Court has found "state action" when private actors have assumed roles traditionally reserved for public administration. For private conduct to constitute state action under this theory,

---

[17] This is the same conclusion arrived at by the United States Court of Appeals for the Seventh Circuit in *Sherman*. The *Sherman* court also applied *Gilmore* to a case where Boy Scouts of America (BSA) had been allowed to use school facilities and student mailboxes. That court rightly concluded, "BSA merely took advantage of what was available to all organizations of its class." *Sherman, supra* at 1167.

a plaintiff must show that the discriminatory private actor was exercising power "traditionally exclusively reserved to the State." *Jackson, supra* at 352. The Supreme Court has explained, "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " *Flagg Bros, Inc v Brooks,* 436 US 149, 158; 98 S Ct 1729; 56 L Ed 2d 185 (1978) (citation omitted).

The Supreme Court has found private actors to have assumed traditional state functions exclusively reserved to the state when those actors discriminated in conducting elections, *Smith v Allwright,* 321 US 649; 64 S Ct 757; 88 L Ed 987 (1944); discriminated in primaries that effectively determined electoral candidates, *Terry v Adams,* 345 US 461; 73 S Ct 809; 97 L Ed 1152 (1953); discriminated while functioning as a municipality, *Marsh v Alabama,* 326 US 501; 66 S Ct 276; 90 L Ed 265 (1946), and *Evans v Newton,* 382 US 296; 86 S Ct 486; 15 L Ed 2d 373 (1966); or discriminatorily performed educational duties, provided fire or police protection, or collected taxes. See *Flagg Bros, supra* at 163.

Plaintiffs contend that Boy Scouts' school-hours visit evinced state action by displacing, or effectively replacing, the classroom teacher. We disagree. A Boy Scouts' representative's entering the classroom to disseminate information about the group and its meeting time does not rise to the level of education; the visit was informative, not educational. Therefore, Boy Scouts was not a state actor performing a traditional government function.

### b. *STATE COMMAND OR COMPULSION*

"State action" will also exist if the state, by operation of law, mandates the discrimination of a private party. "[A] State is responsible for the . . . act of a private

party when the State, by its law, has compelled the act." *Adickes v S H Kress & Co*, 398 US 144, 170; 90 S Ct 1598; 26 L Ed 2d 142 (1970). "When the State has commanded a particular result, it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved' in it." *Peterson v Greenville*, 373 US 244, 248; 83 S Ct 1119; 10 L Ed 2d 323 (1963) (citations omitted). The state must effectively coerce the private party to act; merely acquiescing in the private conduct is not enough:

> [A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment. [*Blum v Yaretsky*, 457 US 991, 1004-1005; 102 S Ct 2777; 73 L Ed 2d 534 (1982) (citations omitted).]

In *Moose Lodge No 107 v Irvis*, 407 US 163; 92 S Ct 1965; 32 L Ed 2d 627 (1972), the Supreme Court held that a private club's policy was not state action because the state could not have forced the private club to comply with its exclusionary policy. Here, Mt. Pleasant did not force Boy Scouts to implement a policy on religion. Similarly, Mt. Pleasant did not require Boy Scouts to visit the school system, distribute its flyers, or use school facilities for meetings. Mt. Pleasant lacked all legal force to compel Boy Scouts to participate in the school district. Therefore, Boy Scouts was not a state actor by state compulsion.

#### c. *JOINT PARTICIPATION OR ENTWINEMENT*

Alternatively, the Supreme Court has found joint participation between the state and a private entity to

evince state action: "[A] private party's joint participation with a state official in a conspiracy to discriminate would constitute . . . 'state action essential to show a direct violation of [a] petitioner's Fourteenth Amendment equal protection rights. . . .' " *Lugar v Edmondson Oil Co*, 457 US 922, 931; 102 S Ct 2744; 73 L Ed 2d 482 (1982) (citations omitted).

The Supreme Court found such joint participation, or "entwinement," in *Brentwood Academy*. There, the Court found that the state's not-for-profit high school athletic association, which, directed by permanent state employees, organized and regulated high school sports, was sufficiently entwined with the state school system to make the association a state actor. The Court found "pervasive entwinement [to exist] to the point of largely overlapping identity [between the association, an ostensibly private organization, and the state school system, a governmental entity]." *Brentwood Academy, supra* at 303.

Plaintiffs allege that Boy Scouts and Mt. Pleasant were so entwined by citing the charter agreement between Boy Scouts and Mt. Pleasant's Rosebush Elementary School and between Boy Scouts and Mt. Pleasant PTAs, Boy Scouts' prioritized access under Mt. Pleasant's policy and the Boy Scouts' practice of referring to its troops by Mt. Pleasant's school names, and Boy Scouts' in-school advertising and school-hours visits. We will address each objection.

### i. BOY SCOUTS-ROSEBUSH CHARTER AGREEMENT

Rosebush Elementary School entered into a charter agreement with Boy Scouts. Plaintiffs' alleged injury derives from Boy Scouts' actions at Fancher Elementary School; therefore, plaintiffs lack the particularized injury required to have standing to challenge Boy Scouts' actions at Rosebush. *Lujan, supra* at 560.

### ii. BOY SCOUTS PARENT-TEACHER ASSOCIATIONS CHARTER AGREEMENTS

Plaintiffs allege that MCL 380.485(2)(a), which requires first-class school districts to "[p]rovide for an autonomous school-community organization in each school within the school district," makes PTAs legally indistinguishable from the school district. The mandate of MCL 380.485 applies to first-class school districts, those of at least 100,000 students. MCL 380.402. Mt. Pleasant does not have 100,000 students; therefore, even if plaintiffs' contention were true, the law has not mandated the creation of the Mt. Pleasant PTAs that sponsored Boy Scouts' troops. Thus, these associations' actions do not carry the state's imprimatur.

Yet, even if this statute applied to Mt. Pleasant, MCL 380.485(2)(a) mandates "autonomous school-community organizations . . . ." "Autonomous" means "[o]f or relating to a self-governing entity."[18] The statute, by the plain meaning of its words, makes its mandated school-community organizations independent, self-governing entities. When construing a statute, where the language is unambiguous, this Court gives the words their plain meaning. *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999). Therefore, this autonomous group's sponsorship of Boy Scouts' troops is not indicative of joint Mt. Pleasant-Boy Scouts participation.[19]

### iii. BOY SCOUTS' PRIORITIZED ACCESS AND USE OF SCHOOL NAMES

Plaintiffs contend that Mt. Pleasant uniquely coordinates with Boy Scouts so its student-members may

---

[18] *The American Heritage Dictionary of the English Language* (2000).

[19] See *Holy Spirit Ass'n v New York State Congress of Parents and Teachers, Inc,* 95 Misc 2d 548, 550; 408 NYS 2d 261 (1978).

meet at members' schools. They also allege that Mt. Pleasant lets Boy Scouts use school names to reference its troops. They assert that these facts evince joint Mt. Pleasant-Boy Scouts participation. We disagree.

Mt. Pleasant is responsible for allocating facility resources. However, as discussed, there is no evidence to show Mt. Pleasant favored Boy Scouts over any other school-related group or uniquely rationed out its facilities to Boy Scouts to plaintiffs' detriment. That Mt. Pleasant accommodated Boy Scouts' location requests, again on a first-come, first-served basis, does not show joint participation; rather, this is proof of the sound administration of Mt. Pleasant's facility allocation rather than probative evidence of entwinement.

Plaintiffs suggest that Boy Scouts' members' use of Mt. Pleasant names shows joint participation. Pursuant to Mt. Pleasant Policy 7510, official use of school names requires permission from the superintendent. No evidence was offered to show that Boy Scouts received permission or that Mt. Pleasant Superintendent, Gary Allen, gave permission. Plaintiffs only showed that Boy Scouts' members colloquially used Mt. Pleasant names to reference troops; there is nothing 'joint' in that showing. The record shows that Boy Scouts troops are officially referred to by troop number, not school name.

Thus, Boy Scouts and Mt. Pleasant did not jointly participate in Boy Scouts' discriminatory conduct because the group accessed Mt. Pleasant's facilities or its members colloquially used school names to refer to its troops.

iv. *IN-SCHOOL LITERATURE DISTRIBUTION AND VISITATION*

As discussed, Mt. Pleasant allowed Boy Scouts to distribute its flyers under the same terms and condi-

tions that applied equally to all other groups. There was nothing uniquely cooperative about Boy Scouts' use of Mt. Pleasant's literature distribution system; Mt. Pleasant merely acquiesced in Boy Scouts' use of the neutral policy Mt. Pleasant implemented to balance free speech and free exercise rights. Acquiescence is not sufficient to establish state action. *Blum, supra.*

Boy Scouts' school-hours visits resulted from Boy Scouts' impetus, as opposed to joint efforts between the group and Mt. Pleasant. Those visits showed no ostensible link to Boy Scouts' religious nature. Mt. Pleasant merely approved Boy Scouts' temporary nonreligious visit.

Therefore, Boy Scouts' advertising and recruiting efforts did not make Mt. Pleasant a participant in Boy Scouts' exclusion of plaintiffs. Thus, because Mt. Pleasant was not jointly participating or sufficiently entwined with Boy Scouts, Boy Scouts was not a state actor.

### d. *SYMBIOSIS*

Last, the Supreme Court has found state action when a private and government entity shared a symbiotic relationship, that is, mutually conferred benefits on one another.

In *Burton v Wilmington Parking Auth*, 365 US 715; 81 S Ct 856; 6 L Ed 2d 45 (1961), the Supreme Court found symbiosis where a diner that leased space from a publicly funded government parking structure racially discriminated against black customers:

> It cannot be doubted that the peculiar relationship of the restaurant to the parking facility in which it is located confers on each an incidental variety of mutual benefits. [*Id.* at 724.]

Here, the benefits of the Boy Scouts-Mt. Pleasant relationship were not mutually beneficial; rather, Boy Scouts was the beneficiary of Mt. Pleasant's neutral policy applicable to all groups seeking admission to school facilities. Further, this relationship was not exclusive to Mt. Pleasant and Boy Scouts; any community organization with an acceptable purpose was eligible to enjoy the same relationship. Thus, the Boy Scouts-Mt. Pleasant relationship was not peculiarly mutual and did not benefit Mt. Pleasant. Therefore, Boy Scouts was not a state actor because it did not share a symbiotic relationship with Mt. Pleasant.

Here, plaintiffs have failed to show that Boy Scouts' policy can be fairly attributed to Mt. Pleasant, as a state actor, and have failed to show a sufficient relationship between Boy Scouts and Mt. Pleasant to make Boy Scouts a state actor. Thus, plaintiffs failed to show that their constitutional right to equal protection has been violated.

### IV. PUBLIC ACCOMMODATION CLAIMS

Michigan protects the public's right to equal access to public accommodations through the Michigan Civil Rights Act and provisions in the Michigan Penal Code, often referred to as the equal accommodation act, that criminalize violations of public accommodation law and impose civil liability. MCL 37.2101 *et seq.*, MCL 750.146 *et seq.* These laws (1) guarantee and protect the right to full and equal enjoyment of educational institutions and places of public accommodation and (2) prohibit the publication of a communiqué that asserts that an educational institution or place of public accommodation is not open because of an individual's religion.

The Michigan Civil Rights Act was created to provide statutory relief for violations of this right of equal

enjoyment and a foundation in law for injunctive relief and damages. MCL 37.2101. The equal accommodation act provides similar relief and holds superintendents and employees of protected places civilly and criminally liable for violating the act. MCL 750.147. See *Ferrell v Vic Tanny Int'l, Inc.*, 137 Mich App 238; 357 NW2d 669 (1984).

The Michigan Civil Rights Act requires that plaintiffs show unjustified disparate treatment or intentional discrimination related to access to a place of public accommodation or illegal advertising. See *Clarke v Kmart Corp*, 197 Mich App 541; 495 NW2d 820 (1992). Similarly, the equal accommodation act requires that a plaintiff show a withholding, refusal, or denial of public accommodations or illegal advertising. *Tucich v Dearborn Indoor Racquet Club*, 107 Mich App 398; 309 NW2d 615 (1981).

### A. FULL, EQUAL ENJOYMENT

Under both acts, Mt. Pleasant is a protected educational institution and place of public accommodation. The Michigan Civil Rights Act prohibits educational institutions from "[d]iscriminat[ing] against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion . . . ." MCL 37.2402. The equal accommodation act similarly guarantees that "[a]ll persons within the . . . state [are] entitled to full and equal accommodations, advantages, facilities and privileges of . . . public educational institutions . . . ." MCL 750.146.

Further the Michigan Civil Rights Act prohibits, except where permitted by law, "[d]eny[ing] an individual the full and equal enjoyment of the . . . facilities, privileges, advantages, or accommodations of a place of public accommodation . . . because of religion . . . ."

MCL 37.2302(a). The equal accommodation act guarantees that "[a]ll persons within the ... state [are] entitled to full and equal accommodations, advantages, facilities and privileges of ... all ... places of public accommodation ...." MCL 750.146.

Plaintiffs concede that Boy Scouts' meetings are not educational institutions or places of public accommodations under either act and recognize that Boy Scouts' members, as private club members, have a First Amendment right to freely associate, which plaintiffs' forced inclusion would violate. Further, plaintiffs concede that, as a private club, Boy Scouts would normally be exempted from public accommodation statutes, see MCL 37.2303; *Roberts v United States Jaycees*, 468 US 609; 104 S Ct 3244; 82 L Ed 2d 462 (1984), but contend that Boy Scouts is not exempt because it is practicing its exclusionary policy in Mt. Pleasant, an avowed educational institution and place of public accommodation.

Boy Scouts and Mt. Pleasant did not violate Michigan's public-accommodation protections. Mt. Pleasant did not discriminate against plaintiffs' full and equal use of or benefit from Mt. Pleasant or its programs; nor did Boy Scouts, as a beneficiary of Mt. Pleasant's neutral access policy, inhibit plaintiffs' right to full, equal access.

However, Boy Scouts' meetings were not Mt. Pleasant "programs," from which Ben was excluded; rather, they were private meetings of Boy Scouts' members who, as such, have a First Amendment right to disassociate from nonreligious persons.

Further, plaintiffs had equal, but unexercised, rights of access to Mt. Pleasant for their own purposes. No evidence was offered to show that Mt. Pleasant's facilities could not accommodate both Boy Scouts and plaintiffs. Mt. Pleasant did not ration its facilities to Boy

Scouts over plaintiffs; rather, had they sought access to a facility, plaintiffs would have been subject to the same terms and conditions of Mt. Pleasant's neutral policy that apply to all groups. However, plaintiffs never sought admittance and, therefore, were never denied the full and equal enjoyment of Mt. Pleasant.

Plaintiffs argue that, because Boy Scouts' meetings are closed to them, they are effectively deprived *full* enjoyment of Mt. Pleasant's facilities. This argument sweeps too broadly. Full enjoyment does not require that patrons of public accommodations or educational facilities be given carte blanche to indiscriminately enter any classroom or gymnasium regardless of the competing interests of others. That plaintiffs might be required to share separate areas of the same building with a religious or other exclusionary group is an onus that must be suffered in a democratic society. No proof has been offered to show that, despite Boy Scouts' presence, plaintiffs could not also fully enjoy use of Mt. Pleasant's facilities. Thus, plaintiffs were not denied their rights to fully and equally enjoy Mt. Pleasant as an educational institution and place of public accommodation.

### B. *PROHIBITED COMMUNICATION PURPORTING TO DENY THE FULL ENJOYMENT OF MT. PLEASANT*

The Michigan Civil Rights Act and the equal accommodation act prohibit the direct or indirect publication of any communiqué indicating that the full and equal enjoyment of the facilities, privileges, advantages, or accommodations of a place of public accommodation will be denied an individual because of religion or that an individual's presence at a place of public accommodation is unwelcome or unacceptable because of his religion. MCL 37.2302(b), 37.2402(e), and 750.147.

Boy Scouts did print and Mt. Pleasant did circulate flyers including Boy Scouts' declaration of religious principle. However, we need not decide whether those flyers violate Michigan public accommodations statutes because, as explained, plaintiffs effectively caused their alleged injury and, therefore, do not have standing to challenge the flyers. See *Lujan, supra.*

Affirmed.