*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH BAKER,

   Plaintiff-Appellant,

v

THOMAS H. BEIRD, M.D.,

   Defendant-Appellee.

UNPUBLISHED
March 14, 2019

No. 341707
Saginaw Circuit Court
LC No. 14-022295-NH

Before: METER, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's orders which denied Plaintiff's motion to amend her complaint to add a breach of contract claim and which granted summary disposition to defendant pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) on the basis that plaintiff's argument on causation was not supported by the testimony of plaintiff's expert. We affirm.

This case arose from allegations of medical malpractice following plaintiff's mastectomy and breast reconstruction by defendant. Plaintiff alleged that defendant breached the standard of care for specialists in plastic surgery by failing to use AlloDerm graft material during the placement of expanders and by overfilling the expanders to capacity plus 10%. However, plaintiff's expert witness testified that filling an expander to capacity plus 10% was not a breach of the standard of care, and AlloDerm was only required when the space for the expander could not be covered by the patient's muscle. Plaintiff's expert was unable to provide testimony that defendant breached the standard of care in this case. Accordingly, defendant filed a motion in limine related to the expert's opinion on subjects that did not support a prima facie case of medical malpractice. Plaintiff acknowledged the challenges to her malpractice case and requested the opportunity to amend her complaint to add a breach-of-contract claim. The trial court granted defendant's motion in limine, but denied plaintiff's request to amend her complaint, noting that the amendment would be futile. Subsequently, defendant filed a motion for summary disposition, arguing that plaintiff was unable to establish a breach of the standard of care, and the trial court granted defendant's motion.

## I. REQUEST TO AMEND COMPLAINT

Plaintiff argues that the trial court erred when it denied her request to amend the complaint to add a claim for breach of contract. We disagree.

"The grant or denial of leave to amend pleadings is within the trial court's discretion." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). "This Court will not reverse a trial court's decision regarding leave to amend unless it constituted an abuse of that discretion that resulted in injustice." *Id*. at 142. "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008) (citation omitted). Finally, the existence of a contract is a question of law that this Court reviews de novo. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

Plaintiff first argues that MCR 2.118 does not contain any language that permits the court to deny a motion to amend based on the fact that the amendment would be "futile." Plaintiff's argument is unavailing. MCR 2.118(A)(2) provides, "[A] party may amend a pleading only by leave of the court," and "[l]eave shall be freely given when justice so requires." Further, MCR 2.116(I)(5) provides that a court shall allow a party the opportunity to amend their pleadings after summary disposition is granted under MCR 2.116(C)(8), (9), or (10), unless the evidence reveals that amendment would not be justified. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

A circuit court may deny a motion to amend for "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014) (citation omitted).

Relying on *Stewart v Rudner*, 349 Mich 459; 84 NW2d 816 (1957), plaintiff argued a patient and a physician may enter into a contract for services and that damages are recoverable for breach of such a contract.[1] As a result, plaintiff posits, an amendment would not have been futile. Plaintiff contends that an informed consent form, which she was required to sign before

---

[1] In *Stewart*, the plaintiff had two stillbirths and believed she needed to deliver her third child via Cesarean section. *Id*. at 460. The defendant assured the plaintiff that "a Cesarean would be performed." *Id*. at 461. When the plaintiff appeared at the hospital in labor on September 4, 1953, doctors detected a fetal heartbeat. *Id*. at 462. The plaintiff expected a Cesarean section at that time but was sent home. *Id*. The next day, doctors couldn't detect a fetal heartbeat, and the baby was stillborn. *Id*. Our Supreme Court held that "action in contract is based upon a failure to perform a special agreement." *Id*. at 468. Given the special agreement by the defendant to perform a Cesarean section, the plaintiff was entitled to collect contract damages, including damages for pain, mental suffering, and loss of wages. *Id*. at 476.

her surgery, together with oral statements made by defendant to plaintiff during consultation, constituted a contract. We disagree.

A breach-of-contract claim is predicated on the defendant's alleged failure to perform a special agreement, whereas medical malpractice is predicated on a defendant's negligent performance of a medical procedure. In the instant case, plaintiff seeks to establish a contract with an informed consent form and conversations she had with defendant. This theory is similar to that proffered in *Penner v Seaway Hosp*, 169 Mich App 502, 510; 427 NW2d 584 (1988), which this Court rejected.[2]

The pertinent question before us is whether a valid contract existed between plaintiff and defendant that required the performance of a special agreement. A contract is a "special agreement" when it is a contract to perform a "specific act" and not one to exercise the appropriate skills in providing the service. *Barnard v Dilley*, 134 Mich App 375, 378; 350 NW2d 887 (1984).

"The essential elements of a valid contract are the following: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.' " *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (citation omitted). Before a contractual relationship is established, there must also be an offer and an unambiguous acceptance in strict conformance with that offer. *Kloian*, 273 Mich App at 452. Moreover, "mutual assent or a meeting of the minds on all the essential terms" is needed to find the existence of a contract. *Id*. at 453. An "objective standard" is applied to determine whether a meeting of the minds occurred, "looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citation omitted).

The informed consent form signed by plaintiff before her surgery does not support a conclusion that a contract for a specific act was created between the parties. The language in the form supports the trial court's conclusion that the form was, in fact, an informed consent form. Specifically, the last paragraph of the form stated,

---

[2] In *Penner*, the plaintiff claimed that an Authorization for Treatment form was a special contract. *Penner*, 169 Mich App at 510. This Court rejected the plaintiff's argument, characterizing it as "an attempt to disguise a tort action sounding in malpractice in to a contract action . . . ." *Id*. Upon review of the Authorization for Treatment form, this Court concluded:

The "Authorization for Treatment" form signed by the decedent merely authorized the hospital and its doctors to render appropriate medical care. Their failure to do so constitutes malpractice. This case is unlike *Stewart*, wherein the defendant doctor specifically agreed to perform a Cesarean section. In our case, there was no agreement to perform any specific act. In fact, the only acts that the decedent agreed to allow the hospital to perform were those that were deemed necessary or advisable in the professional judgment of the attending physician. Thus, plaintiff has not established a contract cause of action. [*Id*.]

You are required to sign this form. It indicates that you have read the informed consent and fully understand what complication[s] might occur. It also denotes that we have discussed this with you during your office visit. This form will be a part of your permanent record, and a copy will be given to you. The form must appear in your chart before you undergo surgery.

Aside from defendant's general promise to try to make breast reconstruction a positive experience for the patient, there was nothing on the form that identified any specific act to be performed by defendant. The form did not identify the type of reconstruction selected, the size of the implant requested, whether plaintiff chose to have nipple reconstruction, or anything specific to plaintiff's surgery. Accordingly, the form did not reflect an "unambiguous acceptance in strict conformance" with the terms plaintiff now claims constituted a contract. *Kloian*, 273 Mich App at 452. Moreover, given the lack of specificity within the form, we cannot determine that "mutual assent or a meeting of the minds on all the essential terms" was reached. *Id*. at 453. Therefore, the trial court did not err when it determined that the form did not contain all of the required elements for contract formation,[3] and that an amendment to the complaint alleging a breach-of-contract claim would be futile.

Plaintiff additionally suggests that the trial court should have allowed her to amend her complaint to conform to the evidence concerning defendant's alleged failure to adequately respond to her complaints of pain following the surgery. However, plaintiff never requested an opportunity to amend her complaint to conform to the proofs. Rather, when defendant objected to plaintiff's arguments concerning negligent post-operative care at a hearing on his motion for summary disposition, plaintiff insisted that such allegations were included in her original complaint. Plaintiff did not file a motion to amend following the trial court's grant of summary disposition, despite the trial court's confirmation that the post-operative theory was not part of plaintiff's original complaint; nor did she submit a proposed amended complaint to the trial court. "Absent the submission of the proposed complaint in writing or a clear statement of plaintiff's claim," we are unable to discern an abuse of discretion. *Anton, Sowerby & Assoc, Inc v Mr C's Lake Orion, LLC*, 309 Mich App 535, 551-552; 872 NW2d 699 (2015).

## II. SUMMARY DISPOSITION

Plaintiff also argues that the trial court erred by granting summary disposition. Plaintiff argues that, although there were some inconsistencies in her expert witness's testimony, the expert testimony as a whole sufficed to prove that defendant's failure to use AlloDerm resulted in plaintiff's pain, suffering, and mental anguish. We disagree.

We review de novo the trial court's decision on a motion for summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Summary disposition under MCR 2.116(C)(10) is proper when "[t]here is no genuine issue as to any material fact, and the moving

---

[3] Furthermore, to the extent that plaintiff now argues that the written document was combined with the oral promises made by defendant during the consultation to create a contract, plaintiff provided no evidence to support a claim that any oral promises were made.

party is entitled to judgment or partial judgment as a matter of law." "Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

"The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." *Scalise v Boy Scouts of America*, 265 Mich App 1, 10; 692 NW2d 858 (2005) (quotation marks and citation omitted). "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (citation omitted). When the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993).

> In order to establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwood Hosp,* 471 Mich 67, 86; 684 NW2d 296 (2004).]

"Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2011) (quotation marks and citation omitted). The concept of causation encompasses both cause in fact and proximate cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). An analysis of proximate cause examines whether "the harm caused to the plaintiff was the general kind of harm that the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (quotation marks and citation omitted). A court must determine that a plaintiff has established factual causation before proximate causation becomes a relevant issue. *Id*.

During his deposition, plaintiff's expert explained that during the step of breast reconstruction where an expander is placed, "you need the bottom half of this expander covered *either with muscle* or with AlloDerm or a material like AlloDerm." (Emphasis added.) Accordingly, this testimony supports the conclusion that the use of AlloDerm is not a strict requirement. The expert further noted that "put[ting] in too much fluid without having a coverage of the implant of either the muscle or the native tissue" would be a violation of the standard of care. However, the expert acknowledged, based on his review of defendant's operative notes, that the expanders were placed "behind the pectoralis major muscle, and that the implant was then expanded underneath the muscle." Plaintiff's expert could not say that defendant failed to comply with the standard of care because he was not present to see the amount of space and coverage available. Rather, plaintiff's expert indicated that defendant would have been in violation of the standard of care *if* he did not have enough space for the filled expanders. However, he did not testify that this actually occurred, and plaintiff presented no other evidence that could establish a breach of the standard of care. Accordingly, plaintiff failed

to meet her burden of establishing a breach of the standard of care, and the trial court did not err by granting defendant's motion for summary disposition.

Affirmed.

/s/ Patrick M. Meter
/s/ Deborah A. Servitto
/s/ James Robert Redford