DEPARTMENT OF TRANSPORTATION
v NORTH CENTRAL COOPERATIVE LLC

Docket No. 268432. Submitted July 18, 2007, at Lansing. Decided
January 24, 2008, at 9:00 a.m.

The Michigan Department of Transportation (MDOT) brought a
negligence action in the Ingham Circuit Court against North
Central Cooperative LLC, seeking to recover damages resulting
from an accident in which a North Central tanker truck carrying
liquefied petroleum gas (LPG) fell off a freeway overpass and
exploded. MDOT first brought an action against North Central's
insurer, Farmland Insurance Company, whose liability was limited
to $1 million. MDOT then brought this action against North
Central itself to recover the remaining costs, arguing that the
federal standards adopted in the Motor Carrier Safety Act, MCL
480.11 et seq., required North Central to carry $5 million of
liability to transport LPG and created an exception to the general
abolition of tort liability for motor vehicle owners and operators in
the no-fault act, MCL 500.3135(3). The court, Beverley Nettles-
Nickerson, J., granted North Central's motion for summary dis-
position, ruling that MDOT's action was barred by the no-fault act
and by res judicata. MDOT appealed.

The Court of Appeals held:

1. In an action in which the plaintiff seeks to recover the
financial security required by the Motor Carrier Safety Act for the
transportation of hazardous materials, the proper party against
whom the claim should be made is the insured. The adoption of
federal financial requirements in the Motor Carrier Safety Act for
the transportation of hazardous materials created an exception to
the no-fault act's abolition of tort liability with respect to trans-
porters of hazardous materials.

2. The trial court erred by ruling that the plaintiff's cause of
action was barred by res judicata because the issue of the defen-
dant's negligence could not have been raised in MDOT's action
against Farmland, and because the facts and evidence necessary to
resolve whether the defendant was negligent are significantly
different from the evidence that was necessary to resolve the
extent to which Farmland was responsible for damages payable

under the no-fault act. The doctrine of collateral estoppel is also inapplicable because there is no indication that the issues of federal preemption and conflict with the Motor Carrier Safety Act were actually and necessarily determined in the prior proceeding.

3. MDOT was not bound by court rule to join North Central in its action against Farmland for amounts owed pursuant to insurance policies, and MDOT cannot be faulted for the fact that Farmland waived its right to assert that joinder of North Country was required in the previous action.

Reversed and remanded for further proceedings.

ZAHRA, J., dissenting, concluded that *Dep't of Transportation v Initial Transport, Inc*, 276 Mich App 318 (2007), on which the majority relied, was wrongly decided for the reasons expressed in the dissent and should be limited to its express holding that the Motor Carrier Safety Act created an exception to the $1 million cap in the no-fault act rather than expanded to override the no-fault act's abolition of tort liability as it relates to the hauling of certain hazardous materials.

INSURANCE — NO-FAULT — PROPERTY PROTECTION INSURANCE — MOTOR CARRIERS — MOTOR CARRIER SAFETY ACT — FINANCIAL RESPONSIBILITY.

An insured party may be sued under the Motor Carrier Safety Act for negligence arising from the ownership, maintenance, or use of a motor vehicle notwithstanding the general abolition of tort liability for such negligence provided in the no-fault act (MCL 480.11 *et seq.*, 500.3135[3]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom* and *Joshua W. Gubkin*, Assistant Attorneys General, for the plaintiff.

*Harvey Kruse, P.C.* (by *Michael J. Guss* and *Anne V. McArdle*), for the defendant.

Before: MURPHY, P.J., and ZAHRA and SERVITTO, JJ.

SERVITTO, J. Plaintiff appeals as of right the circuit court's order granting summary disposition in defendant's favor. Because the requirement of the Michigan Motor Carrier Safety Act, MCL 480.11 *et seq.*, that transporters of hazardous materials maintain $5 mil-

lion in security creates an exception to the no-fault act's $1 million cap on damages, and neither res judicata nor compulsory joinder bars the present action, we reverse and remand for further proceedings.

This lawsuit arises out of an accident involving a tanker truck, owned by defendant and operated by defendant's employee, that was transporting liquefied petroleum gas (LPG). The truck apparently struck a guardrail, which caused the tanker to separate from the trailer, crash over the barriers of a freeway overpass, and plummet to the road below. Upon impact, the tanker exploded, enveloping the road and overpass bridge in flames and ultimately causing significant damage to both. Plaintiff paid nearly $2 million to repair the damage.

Plaintiff brought suit against defendant's insurer, Farmland Insurance Company (Farmland), under the no-fault act, MCL 500.3101 *et seq.*, to recover the cost of the repairs. Plaintiff was awarded $658,138.11 in its action against Farmland.[1] Plaintiff thereafter initiated the present negligence action against defendant, contending that defendant was directly liable for the remaining damages. Plaintiff also alleged that, to the extent that defendant may be immune from tort liability under the no-fault act, the no-fault act conflicted with and was preempted by 49 USC 5101 *et seq.*, which governs the transportation of hazardous materials. Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), and the trial court granted the motion, opining that the no-fault act controls; that because defendant maintained $1 million in insurance

---

[1] The court ruled that Farmland's liability was limited to $1 million for all property damage arising out of the incident, and because Farmland had already paid $341,861.90 to other claimants from the accident, plaintiff's recovery was limited to $658,138.11.

coverage as required by the no-fault act, defendant is immune from liability; and that the no-fault act does not conflict with 49 USC 5101. The trial court further opined that res judicata barred the present action.

This Court reviews a trial court's decision on summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a plaintiff's complaint on the pleadings alone. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). In assessing a motion brought under MCR 2.116(C)(8), all factual allegations are accepted as true, *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993), as well as any reasonable inferences or conclusions that can be drawn from the facts. *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

In ruling on a motion for summary disposition under MCR 2.116(C)(10), "a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Scalise v Boy Scouts of America*, 265 Mich App 1, 10; 692 NW2d 858 (2005). Summary disposition is appropriate under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." This Court reviews de novo a trial court's ruling on a motion for summary disposition made pursuant to MCR 2.116(C)(10). *Scalise, supra* at 10.

On appeal, plaintiff asserts that while the no-fault act may be read to abolish tort liability for property damage resulting from automobile accidents as long as the owner maintains $1 million in insurance coverage, federal law requires that transporters of hazardous materials carry at least $5 million of financial responsibility to satisfy any liability for property damage. Plaintiff contends that to the extent the federal regulation conflicts with the no-fault act, the federal law is controlling under the Supremacy Clause and thus preempts the no-fault act on this issue. Plaintiff further contends that the adoption of federal financial requirements for the transportation of hazardous materials in the Motor Carrier Safety Act creates an exception to the no-fault act's abolition of tort liability with respect to transporters of hazardous materials. Because, as addressed below, we find plaintiff's second argument dispositive, we need not consider its first argument.

MCL 500.3101(1) requires the owner or registrant of a motor vehicle required to be registered in this state to "maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL 500.3135(3) abolishes tort liability[2] arising from the ownership, maintenance, or use of a motor vehicle, as long as the owner or registrant of the motor vehicle maintained security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance as required by MCL 500.3101(1). MCL 500.3121 further provides:

(1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, mainte-

---

[2] With limited exceptions, none of which is at issue in this matter.

nance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127.

\* \* \*

(5) Property protection insurance benefits consist of the lesser of reasonable repair costs or replacement costs less depreciation and, if applicable, the value of loss of use. However, property protection insurance benefits paid under 1 policy for damage to all tangible property arising from 1 accident shall not exceed $1,000,000.00.

However, federal law, under 49 USC 31139(d) and 49 CFR 387.9, requires that a $5 million level of financial responsibility be carried for the transportation of hazardous substances (such as LPG). Effective January 8, 1996, Michigan adopted by reference certain federal motor carrier safety regulations (including the above) through the Motor Carrier Safety Act (MCSA), MCL 480.11 *et seq.* According to plaintiff, the MCSA thus created an exception to the no-fault act's general abolition of tort liability for owners or registrants of motor vehicles who maintained $1 million in security for payment of benefits as required by MCL 500.3101(1). We agree.

This Court recently addressed this issue in *Michigan Dep't of Transportation v Initial Transport, Inc*, 276 Mich App 318; 740 NW2d 720 (2007). In *Initial Transport,* a cargo tank trailer containing gasoline detached from the semi-tractor that was towing it, crossed over the barrier wall, and fell onto the roadway below. The tanker trailer then exploded, causing a fire that severely damaged parts of the overpass and adjoining structures. The plaintiff's repair costs were approximately $3.5 million.

At the time of the accident, the defendant maintained a general insurance policy for $1 million in property

protection benefits as well as a separate excess liability policy with an additional $4 million limit. The plaintiff filed a complaint to reach the higher limit under the umbrella policy, asserting, among other claims, that the adoption in the MCSA of federal regulations for transportation of hazardous materials, MCL 480.11, created an exception to the damages limitation in the no-fault act. A panel of this Court agreed, holding that while the Legislature intended MCL 500.3121(5) to apply to all vehicles, it later crafted, through enactment of the MCSA, an exception to the $1 million cap on property damages payable under one policy, imposing potential liability in addition to that imposed by the no-fault act on motor carriers carrying hazardous materials. *Id.* at 326.

This Court reasoned that

> because the MCSA requires motor carriers to maintain minimum levels of financial responsibility, "the financial reserves (e.g., insurance policies or surety bonds) sufficient to satisfy liability amounts set forth in this subpart covering public liability," we are bound to presume that benefits from these insurance policies must be recoverable by parties injured by those motor carriers. [*Id.* at 327.]

The Court further noted that

> 49 CFR 387.11, incorporated into the MCSA, MCL 480.11a(1)(b), requires insurers who furnish the necessary insurance policies to be legally authorized to be "willing to designate a person upon whom process, issued by or under the authority of any court having jurisdiction of the subject matter, may be served in any proceeding at law or equity brought in any State in which the motor carrier operates." This language clearly contemplates actions against insurers to recover mandated benefits. We conclude that the broad language "any court" and "any proceeding at law or equity" implies a remedy for a party injured by an insured. [*Id.*]

This Court, then, ruled that the MCSA would be rendered meaningless if it did not provide protection

over and above that allowed by the no-fault act and that it served as an exception to the no-fault act.

In this matter, because defendant was transporting LPG, it was required, under federal regulations and the MCSA, to maintain $5 million in security to satisfy any financial responsibility for public liability, property damage, and environmental restoration incurred as a result of the transportation of the hazardous substance. While it is unclear from the written record whether defendant had the proper level of security, defense counsel stated at oral argument that defendant maintained the requisite security in compliance with both the no-fault act and the MCSA, and indicated in a supplemental brief that it maintained the same through two separate policies issued by Farmland. Pursuant to *Initial Transport,* plaintiff can recover that security. What the *Initial Transport* Court did not address, however, and what we must address today, is the proper party against whom a claim should be made to recover the financial security required by the MCSA.[3]

It has been held that in an action in which the plaintiff seeks property protection benefits arising out of the ownership, maintenance, or use of a motor vehicle the insurer, and not the insured, is the proper party defendant to the action. *Matti Awdish, Inc v Williams,* 117 Mich App 270, 275-276; 323 NW2d 666 (1982). With respect to an action in which the plaintiff seeks security provided for in the MCSA, we have no such binding Michigan authority to direct us. We find guidance on this matter, however, in the code of federal regulations.

---

[3] The *Initial Transport* Court had no need to address this issue, as both the tortfeasor and the insurance company that issued the excess coverage policy were both defendants in the initial lawsuit.

Most significant is 49 CFR 387.15, which prescribes the form of endorsements, known as MCS-90 endorsements, for the required policies of insurance. An illustration of an acceptable endorsement is included in 49 CFR 387.15, and it includes a definitional section that provides as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . .
>
> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

"Every insurer must use this endorsement or equivalent language." *American Inter-Fidelity Exch v American Re-Insurance Co*, 17 F3d 1018, 1021 (CA 7, 1994).

Notably, the endorsement language provides that the insurer agrees to pay any final judgment entered against the insured for negligence involving vehicles subject to the federal financial responsibility requirements. Obviously, for a final judgment to enter against the insured, an action must first proceed against the insured. Only when a final judgment against the insured is entered is the insurer's responsibility to pay triggered and, if the insurer fails to pay the judgment, a cause of action against the insurer for repayment of the

judgment arises. Given the required language in endorsements concerning the transportation of hazardous materials, and taking into account that "the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from *negligent authorized interstate carriers*," *John Deere Ins Co v Nueva*, 229 F3d 853, 857 (CA 9, 2000) (emphasis added), we conclude that to recover the security required under the MCSA for the transportation of hazardous materials, a plaintiff must proceed with a negligence action against the insured.

We fully recognize that such a negligence action would conflict with MCL 500.3135(3), which states: "Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 was in effect is abolished . . . ." However, *Initial Transport* stands not only for the proposition that the required $5 million in financial responsibility is an exception to the $1 million limitation on damages payable under one policy that is set forth in the no-fault act, but also that the federal regulations imply the availability of a cause of action to recover the $5 million policy amount.

Moreover, as this Court stated, although the MCSA does not expressly provide for a private remedy for a third party against an insured or insurer, implied remedies may be cognizable. *Initial Transport, supra* at 327. We agree with the conclusions reached in *Initial Transport* that, absent an implied private cause of action, injured parties would be precluded from recovering damages under the required financial responsibility policies and such a result "would counteract the entire purpose of setting higher minimum limits for

transporters carrying hazardous materials." *Id.* at 328. Indeed, as previously indicated, the language in 49 CFR 387.15 itself demonstrates an intent to provide for a private cause of action against a negligent transporter of hazardous materials. See *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 504; 697 NW2d 871 (2005) ("The act . . . does not expressly provide for a private cause of action . . . . Thus, the question becomes whether the text of the act demonstrates an *implicit* intent to provide for a private cause of action."). Following the binding precedent in *Initial Transport* and the basic rule of statutory construction that a specific statute trumps a contradictory general statute, see *Baxter v Gates Rubber Co,* 171 Mich App 588, 590; 431 NW2d 81 (1988), we hold that to recover the security required under the MCSA for the transportation of hazardous materials, a plaintiff must proceed with a negligence action against the insured.

In addition to holding that the no-fault act controlled the present action, the trial court also ruled that plaintiff's suit was barred by res judicata, reasoning that "these issues could have been set forth in the first claim and that there could have been alternative liability pled." The court did not directly state that collateral estoppel also barred the case, but did recite the requirements for asserting the defense, and indicated that this doctrine may also be applicable. On appeal, plaintiff asserts that res judicata is inapplicable and that the trial court erred in ruling otherwise, while defendant argues that both res judicata and collateral estoppel operate to bar plaintiff from bringing the instant action. The application of a legal doctrine, such as res judicata or collateral estoppel, presents a question of law that we review de novo. *Pierson Sand & Gravel, Inc v Keeler*

*Brass Co,* 460 Mich 372, 379; 596 NW2d 153 (1999); *Barrow v Pritchard,* 235 Mich App 478, 480; 597 NW2d 853 (1999).

The doctrine of res judicata (also known as claim preclusion) is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) the matter in the second case was, or could have been, resolved in the first, and (3) both actions involve the same parties or their privies. *Sewell v Clean Cut Mgt, Inc,* 463 Mich 569, 575, 621 NW2d 222 (2001). This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart v Dart,* 460 Mich 573, 586; 597 NW2d 82 (1999).

Here, neither party disputes that a decision was rendered on the merits in plaintiff's action against Farmland, given that the trial court granted plaintiff recovery in the amount of $658,138.11. With respect to the second element of res judicata, we do not believe that the issue of defendant's negligence could or should have been resolved in plaintiff's no-fault action against Farmland.

First, MCL 500.3030 provides:

> In the original action brought by the injured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor, except as otherwise provided by law, shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial.

Farmland thus could not have been named as a party defendant or referenced in a negligence action against defendant.[4] If the claims against defendant and Farmland proceeded to trial in a single lawsuit, a jury would hear that Farmland issued a no-fault insurance policy to defendant, contrary to the above.

Second, the test to determine whether the two actions involve the same subject is whether the facts are identical in both actions or whether the same evidence would sustain both actions. If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata. *Adair v Michigan,* 470 Mich 105, 123-124; 680 NW2d 386 (2004). If different facts or proofs would be required, res judicata does not apply. *PT Today, Inc v Comm'r of the Office of Financial & Ins Services,* 270 Mich App 110, 146; 715 NW2d 398 (2006). In plaintiff's lawsuit against Farmland for no-fault damages, the issue was whether Farmland alone, or Farmland and another insurer were responsible for damages payable under the no-fault act, which required interpretation of the no-fault act itself. The present action, in contrast, concerns itself strictly with whether defendant was negligent in its operation of the tanker truck. The facts and evidence necessary for the resolution of these issues are thus significantly different, and the issues differ in both subject matter and legal basis. The second element of res judicata not having been met, the doctrine is inapplicable. Thus, we need not consider whether the third element was similarly lacking.

Before moving on, we note two practical matters that weigh against the application of res judicata in this matter. First, because we have found that an injured

---

[4] Similarly, the only defendant that could be named in the earlier no-fault action seeking property protection benefits was Farmland. See *Matti Awdish, supra* at 275-276.

party's negligence action against a tortfeasor to recover the financial security required by the MCSA is an exception to the no-fault act's abolition of tort liability, to bring a no-fault cause of action against an insurer and a negligence action against the tortfeasor in the same lawsuit would inevitably lead to juror confusion. Second, until this decision was issued, the no-fault act was viewed as a bar to tort actions against tortfeasors so long as the tortfeasor carried the requisite no-fault insurance. Until we determined otherwise, injured parties likely (and very reasonably) believed that an action against the complying tortfeasor would be futile.

As with res judicata, we find collateral estoppel inapplicable. Collateral estoppel, also known as "issue preclusion," applies when three elements have been met: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.' " *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004), quoting *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988). In contrast to res judicata, "[c]ollateral estoppel conclusively bars only issues 'actually litigated' in the first action." *VanDeventer v Michigan Nat'l Bank*, 172 Mich App 456, 463; 432 NW2d 338 (1988). "A question has not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined." *Id*.

Addressing the requirements of collateral estoppel in reverse order, we first note that mutuality of estoppel is not required in this case, given that collateral estoppel is being asserted defensively. *Monat, supra* at 691-692. With respect to the second element of collateral estop-

pel, we note that defendant was not a party to the prior action. With respect to the first element, there is no indication that the core issues in this action (federal preemption and conflict with the state MCSA) were actually and necessarily determined in that prior proceeding. While defendant notes that plaintiff cited the state MCSA and 49 CFR 387.9 in its response to Farmland's motion for summary disposition in the prior litigation, there is no indication that the trial court addressed these issues. In sum, the doctrines of res judicata and collateral estoppel are inapplicable.

Plaintiff lastly argues that compulsory joinder is not applicable in this matter and thus serves as no cause to bar the present action. Although both parties addressed compulsory joinder before the trial court, the trial court did not decide that this action was barred on this basis, nor did it issue a final ruling on whether or not the rules were applicable. Nevertheless, the arguments of the parties below are sufficient to preserve this issue for appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

MCR 2.203(A) governs compulsory joinder, and states as follows:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Because the first action was against defendant's insurers for amounts owed pursuant to insurance policies, plaintiff was not bound by this court rule to join defendant in that action.

Moreover, MCR 2.205(A), which governs necessary joinder of parties, is inapplicable because it "places on the defendant the burden of objecting to misjoinder." *United Services Automobile Ass'n v Nothelfer*, 195 Mich App 87, 89; 489 NW2d 150 (1992). "If the defendant fails to make such a timely assertion, he . . . in effect . . . 'acquiesces in splitting causes of action . . . .' " *Id.* at 90, quoting *Chunko v LeMaitre*, 10 Mich App 490, 496; 159 NW2d 876 (1968). Because Farmland waived its right to assert that joinder of defendant was required in the prior action, plaintiff cannot be faulted in the present one.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Murphy, P.J., concurred.

Zahra, J. (*dissenting*). I respectfully dissent. I conclude that *Dep't of Transportation v Initial Transport, Inc*, 276 Mich App 318, 334; 740 NW2d 720 (2007), was wrongly decided. I agree with and adopt the reasoning set forth by Judge Whitbeck in his dissenting opinion in *Initial Transport. Id.* at 334. In short, the Motor Carrier Safety Act (MCSA), MCL 480.11 *et seq.*, does not expressly or impliedly provide property protection benefits over and above the $1 million maximum limit set by the Michigan no-fault act, MCL 500.3101 *et seq.* Further, the MCSA is not contrary to or inconsistent with the Michigan no-fault act. The MCSA is a regulatory act that does not create a private right of action against an insured. I would honor the Legislature's $1 million limit for property protection benefits provided in the no-fault act.

In this case, this Court has exacerbated the error of *Initial Transport* by unduly extending the holding of

*Initial Transport* to override the no-fault act's express bar against tort actions. In *Initial Transport*, this Court held "that the later-in-time MCSA imposes potential liability in addition to that imposed by the no-fault act on motor carriers carrying hazardous materials, *creating an exception to the $1 million cap for property damage*" found in MCL 500.3121(5). *Id.* at 326 (emphasis added). In effect, *Initial Transport*'s holding raises the Legislature's express $1 million dollar cap in § 3121(5) to $5 million if a motor carrier is hauling hazardous materials under 49 CFR 387.9. Strictly following *Initial Transport*, plaintiff's claims would be barred by res judicata because plaintiff settled its claim for property damage in its first suit against Farmland Mutual Insurance Company.

Dissatisfied with this result, the majority creates by judicial fiat a legally unsupportable and unduly broad exception to the no-fault act. Now, instead of limiting the impact of *Initial Transport* to a judicial rewrite of the property protection benefit provisions of § 3121(5), this Court has emasculated the Legislature's longstanding abolition of tort liability arising from the ownership, maintenance, or use of a motor vehicle as it relates to the hauling of certain hazardous materials. The majority's interpretation of the relevant statutory provisions is at odds with traditional methods of statutory construction.

MCL 500.3135(3) provides, "Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by [MCL 500.3101] was in effect is abolished . . . ." There is no dispute that defendant insured the tractor-trailer with Farmland and that the security required by MCL 500.3101 was in effect at the time of

the accident relative to the tractor-trailer. Further, there is no dispute that the liability plaintiff seeks to impose rests in tort law and arises from the use and operation of the tractor-trailer within this state. Given that our primary task in construing a statute is to discern and give effect to the intent of the Legislature and that clear, unambiguous statutory language reflects the legislative intent and must be enforced as written, *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004), it is inescapable that the no-fault act bars plaintiff's negligence-based tort action.

Moreover, to the extent that the MCSA is inconsistent with the no-fault act, the majority ignores the introductory phrase of MCL 500.3135(3), which provides, "[n]otwithstanding any other provision of law . . . ." This legislative directive plainly instructs us to apply the no-fault provision abolishing tort liability over "any other provision of law . . . ." Thus, no tort liability can be created out of the MCSA if, as here, it arises "from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by [MCL 500.3101] was in effect . . . ." MCL 500.3135(3).

To the extent I must follow *Initial Transport*, I would limit it to its express holding—that the MCSA creates an exception to the $1 million cap in § 3121(5). I would not expand *Initial Transport* to override the no-fault act's abolition of tort liability as it relates to the hauling of certain hazardous materials.

For these reasons, I would affirm the judgment of the circuit court. I urge the Supreme Court to review this case and the rule of law created in *Initial Transport*.